UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Nicole T.,

Plaintiff,

-against-

Commissioner of Social Security,

Defendant.

1:25-cv-07366 (SDA)

OPINION AND ORDER

STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:

Plaintiff Nicole T. ("Nicole" or "Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Compl., ECF No. 1.) Now before the Court is Plaintiff's motion for judgment on the pleadings. (Pl.'s Mot., ECF No. 12.) For the reasons set forth below, Plaintiff's motion is DENIED and the decision of the Commissioner is AFFIRMED.

## BACKGROUND

### I. Procedural Background

Nicole filed an application for DIB and SSI on December 22, 2021, with an alleged onset date ("AOD") of May 14, 2021. (R. 20, 93.[1]) The Social Security Administration ("SSA") initially denied her application on July 28, 2022, and again, following her request for reconsideration, on

[1] Citations to the Administrative Record, which is filed at ECF No. 9, are made using the prefix "R." followed by the relevant page number(s).

March 14, 2023. (R. 20.) On March 28, 2023, Nicole filed a request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) A telephonic hearing was held on March 5, 2024, before ALJ Michael J. Stacchini. (*Id.*)

In a decision dated July 19, 2024, ALJ Stacchini found Nicole not disabled. (R. 20-41.) Thereafter, Nicole requested review of the ALJ's decision by the Appeals Council and the Appeals Council denied the request on April 25, 2025. (R. 6-11.) As such, the ALJ's decision became the final decision of the Commissioner. (*See* R. 6.)

On September 5, 2025, Nicole commenced the current action, asserting that ALJ Stacchini's decision was erroneous, not supported by substantial evidence and/or contrary to the law. (Compl. ¶ 11.) On April 8, 2026, Nicole filed the motion now before the Court. (*See* Pl.'s Mot.; *see also* Pl.'s Mem., ECF No. 13.) On June 29, 2026, the Commissioner's opposition brief was filed. (Comm'r's Br., ECF No. 18.) No reply memorandum was filed by Plaintiff.

## II. <u>Non-Medical Evidence</u>

Born on April 3, 1981, Nicole was 41 years old on the AOD. (R. 19.) She was injured on May 12, 2021 while working part-time as a package handler at FedEx. (R. 529.) Nicole previously worked in a warehouse and as a bartender. (R. 740.)

## III. <u>Medical Evidence Before ALJ</u>

The Court adopts the summary of the medical evidence set forth by Plaintiff (*see* Pl.'s Mem. at 7-14), which the Commissioner does not dispute. (*See* Comm'r Br. at 1-2.) Relevant portions of the medical evidence are addressed in the Discussion section, *infra*.

## IV. <u>ALJ Stacchini's July 19, 2024 Decision</u>

In a decision dated July 19, 2024, applying the Commissioner's five-step sequential evaluation, *see* Legal Standards Section II, *infra*, ALJ Stacchini found at step one that Nicole had not engaged in substantial gainful activity since the AOD. (R. 23.) At step two, the ALJ determined that the following impairments were severe: degenerative disc disease ("DDD") of the cervical spine, DDD of the lumbar spine, carpal tunnel syndrome ("CTS"), right shoulder internal derangement/impingement, seizure disorder, migraine headaches, depressive disorder, anxiety disorder, posttraumatic stress disorder ("PTSD"), panic disorder and substance use disorder. (*Id*.) At step three, the ALJ found that Nicole did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23-26.)

The ALJ then assessed Nicole's residual functional capacity ("RFC"), determining that she could perform light work,[2] except she was limited to occasional climbing ramps and stairs; without climbing ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; limited to only frequent reaching, except occasional overhead; frequent handling and fingering; should avoid unprotected heights and hazardous machinery; limited to a job that has a moderate sound noise level; in a low stress job as defined as one that has decision making and changes in the work setting related to simple routine repetitive tasks. (R. 26.)

Moving on to step four, the ALJ found that Nicole was unable to perform her past relevant work as a material handler. (R. 39.) At step five, the ALJ considered Nicole's age, education and

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *id*. § 416.967(b).

job skills, along with the RFC determination, and based on testimony from the vocational expert at the hearing, concluded there were jobs that exist in significant numbers in the national economy that Nicole could perform. (R. 39-40.) Therefore, the ALJ found that Nicole was not disabled during the relevant period and denied her claims for benefits. (R. 40-41.)

## LEGAL STANDARDS

### I. Standard Of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." *Ulloa v. Colvin*, No. 13-CV-04518 (ER), 2015 WL 110079, at *6 (S.D.N.Y. Jan. 7, 2015) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision[.]" *Id*. (internal citation omitted); *accord Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). A court must set aside legally erroneous agency action unless "application of the correct legal principles to the record could lead only to the same conclusion," rendering the errors harmless. *Garcia v. Berryhill*, No. 17-CV-10064 (BCM), 2018 WL 5961423, at *11 (S.D.N.Y. Nov. 14, 2018) (quoting *Zabala v. Astrue*, 595 F. 3d 402, 409 (2d Cir. 2010)).

Absent legal error, the ALJ's disability determination may be set aside only if it is not supported by substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). However, "[t]he substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder *would have to conclude otherwise.*" *Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), *as amended* (Apr. 30, 2019) (summary order) (emphasis in original) (citation and internal quotation marks omitted). If the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive. *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

## II. <u>Determination Of Disability</u>

A person is considered disabled for benefits purposes when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . " 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether an individual is disabled, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective

evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted).

The Commissioner's regulations set forth a five-step sequence to be used in evaluating disability claims:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . [continuous period of 12 months], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 [(the "Listings")] . . . and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (internal citations omitted).

If it is determined that the claimant is not disabled at any step of the evaluation process, the evaluation will not progress to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). After the first three steps (assuming that the claimant's impairments do not meet or medically equal any of the Listings), the Commissioner is required to assess the claimant's RFC "based on all the

relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof as to the first four steps. *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). It is only after the claimant proves that she cannot return to work that the burden shifts to the Commissioner to show, at step five, that other work exists in the national and local economies that the claimant can perform, given the claimant's RFC, age, education and past relevant work experience. *Id.* at 51-52; *see also* Pines *v. Comm'r of Soc. Sec.*, No. 13-CV-06850 (AJN) (FM), 2015 WL 872105, at *3 (S.D.N.Y. Mar. 2, 2015), *report and recommendation adopted*, 2015 WL 1381524 (S.D.N.Y. Mar. 25, 2015). If it is determined that the claimant is or is not disabled at any step of the evaluation process, the evaluation will not progress to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). The special technique first requires the ALJ to assess the claimant's degree of functional limitation resulting from a mental impairment in four "broad functional areas" identified in the "paragraph B" of the adult mental disorders listings. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Those four functional areas are: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.*

## III. Regulations Regarding Consideration Of Medical Opinions And Prior Findings

Under the regulations applicable to Plaintiff's claim, the ALJ considers five factors in evaluating the persuasiveness of medical opinions: (1) supportability; (2) consistency; (3)

relationship of the source with the claimant, including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship and whether the relationship is an examining relationship; (4) the medical source's specialization; and (5) other factors, including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Using these factors, the most important of which are supportability and consistency, the ALJ must articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* §§ 404.1520c(b), 416.920c(b).

With respect to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). While the ALJ "may, but [is] not required to, explain how [he] considered" the factors of relationship with the claimant, the medical source's specialization, and other factors, the ALJ "*will* explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings . . . ." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2) (emphasis added). An ALJ must provide sufficient explanation to allow a reviewing

court to "trace the path of [the] adjudicator's reasoning[.]" *Amber H. v. Saul*, No. 20-CV-00490 (ATB), 2021 WL 2076219, at *6 (N.D.N.Y. May 24, 2021) (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017) ("We expect that the articulation requirements in these final rules will allow a . . . reviewing court to trace the path of an adjudicator's reasoning[.]")). An ALJ commits procedural error by failing to explain how he considered the supportability and consistency of medical opinions in the record. *See Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022). A reviewing court still may affirm if "a searching review of the record" assures it "that the substance of the [regulation] was not traversed." *Id.* (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).

## **DISCUSSION**

In support of remand, Plaintiff argues that the ALJ erred in his evaluation of the medical opinion evidence and that the ALJ's RFC determination is not supported by substantial evidence. (Pl.'s Mem. at 18-24.) The Court considers each of these arguments in turn.

### **I. The ALJ's Evaluation Of Medical Opinion Evidence**

Plaintiff argues that the ALJ failed to properly evaluate the supportability and consistency factors as applied to the medical opinion of Melissa Antiaris, Psy. D., who conducted a consultative psychiatric examination of Nicole on May 2, 2022. (*See* Pl.'s Mem. at 18-21; *see also* R. 740-44.) On a mental status examination, Dr. Antiaris had found that Nicole was cooperative and that she was dressed appropriately and was well groomed. (R. 741.) Dr. Antiaris also had found that Nicole was coherent and goal directed, but that she was mildly anxious and that her attention and concentration were mildly impaired due to limited intellectual functioning. (R.

742.) In addition, Nicole's cognitive functioning was judged to be in the below-average range, and her insight and judgment were fair. (*Id*.)

Dr. Antiaris provided the following in her medical source statement:

> There are no limitations in the claimant's ability to understand, remember, or apply simple directions and instructions. She is mildly limited in her ability to understand, remember, or apply complex directions and instructions. She is mildly limited in her ability to use reason and judgment to make work-related decisions; and interact adequately with supervisors, coworkers, and the public. She is mildly limited in her ability to sustain concentration and perform a task at a consistent pace, and sustain an ordinary routine and regular attendance at work. She is markedly limited in her ability to regulate emotions, control behavior, and maintain well-being. She is mildly limited in her ability to maintain personal hygiene and be aware of normal hazards. Difficulties are caused by lack of motivation.
>
> Results of the examination appear to be consistent with psychiatric and substance abuse concerns which may significantly interfere with the claimant's ability to function on a daily basis.

(R. 743.)

In reaching his decision that Nicole was not disabled, ALJ Stacchini found "the marked portion of [Dr. Antiaris'] opinion not persuasive" as it was "not supported by [Dr. Antiaris'] examination, which showed that [Nicole] drove herself to the appointment and she was cooperative and she related adequately." (R. 37.) The ALJ also found that the "marked portion" of Dr. Antiaris' opinion was inconsistent with other evidence in the record, such as a mental status examination conducted on October 19, 2023. (*See* R. 37 (citing Exhibit No. 16F (R. 1268-71)).) The ALJ stated that, during that examination, Nicole "was well groomed, . . . her demeanor was calm and cooperative . . . [h]er speech was clear and coherent" "[h]er thought content was intact [and] [h]er thought processes were logical." (R. 37 (citing to Exhibit No. 16F).)

Plaintiff argues that this reasoning was legally flawed because the ALJ overvalued Plaintiff's presentation in structured or supportive settings, equating those encounters with her ability to function in a competitive work environment. (Pls.' Mem. at 20-21.) "Although ALJs must be careful not to overestimate the significance of a claimant's ability to be cooperative and appropriate during brief visits with supportive medical providers, such evidence can support a decision to discount complaints and/or assessments of marked or extreme limitations." *Brenda S. v. Comm'r of Soc. Sec.*, No. 25-CV-08258 (GRJ), 2026 WL 2906041, at *5 (S.D.N.Y. Sept. 28, 2026) (citing cases). Moreover, as argued by the Commissioner (Comm'r Br. at 6), other treatment notes discussed by the ALJ documented similar findings and further supported the ALJ's consistency determination. *See Boffoli v. Comm'r of Soc. Sec.*, No. 20-CV-05317 (SN), 2022 WL 973754, at *9 (S.D.N.Y. Mar. 31, 2022) (ALJ did not err in discounting marked limitation when inconsistent with other evidence including treatment notes and testimony). Thus, the Court finds that the ALJ properly evaluated the supportability and consistency of Dr. Antiaris' opinion. *See Heather B. v. Comm'r of Soc. Sec.*, No. 24-CV-01182 (AMN) (TWD), 2025 WL 4688013, at *9 (N.D.N.Y. Nov. 7, 2025), *report and recommendation adopted*, 2026 WL 788089 (N.D.N.Y. Mar. 20, 2026) ("Because [the ALJ] explicitly considered both the consistency and supportability of [the] opinion, the ALJ did not fail to properly evaluate the opinion as required by the . . . regulations in making his findings.").

## II. RFC Determination

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence with respect to Plaintiff's CTS, migraine headaches, depressive disorder, anxiety disorder, panic disorder and PTSD. (*See* Pl.'s Mem. at 21-24.) Applying the very deferential standard of review

owed to the ALJ's decision, as set forth below, the Court finds that there is substantial evidence to support the ALJ's RFC determination.

First, with respect to Plaintiff's CTS, the ALJ found that Plaintiff could frequently handle and finger despite her CTS. (R. 26.) An EMG/NCV study in February 2022 revealed mild bilateral CTS, but there is no other evidence in the record regarding CTS and Plaintiff testified that it affected her "at times" but she did not receive treatment for it. (R. 78-79, 565.) At a consultative examination conducted in May 2022, Plaintiff's hand and finger dexterity were found to be intact, and she had full grip strength in both hands. (R. 1179.) In addition, in July 2022, Dr. Abeug found Plaintiff to have no manipulative limitations (R. 103) and Dr. Naroditsky made the same finding in March 2023. (R. 154.) The ALJ found those opinions persuasive as to the manipulative limitations, but still limited Plaintiff to frequent handling and fingering. (R. 37.) Plaintiff has not pointed to any evidence the ALJ overlooked or any evidence to support a more restrictive RFC based upon her CTS. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). Accordingly, the Court agrees with the Commissioner that substantial evidence supports the ALJ's determination. (*See* Comm'r Br. at 7.)

Similarly, Plaintiff has not shown that the ALJ was required to impose greater functional limitations due to Plaintiff's migraine headaches. Plaintiff contends that in November 2022 and May 2023 she reported almost daily migraines, which she described as pounding and incapacitating. (Pl.'s Mem. at 22 (citing R. 156, 1402).) However, other evidence in the record indicates that, while Plaintiff experienced migraines in November 2022, as of February 2023, the medication her neurologist prescribed for migraines was controlling them. (R. 146; *see also* R. 1402 (May 2023 progress note indicating "her headaches are better").) At the ALJ hearing in

March 2024, Plaintiff testified that she did not "have headaches too much anymore" and that the medications she was taking were helping. (R. 81.) Although Plaintiff argues that "[a] reasonable person would expect some limitations for being off task when a migraine headache occurs or some allowance for loss of concentration due to a debilitating migraine headache[,]" she does not point to any evidence in the record that support greater limitations in those areas. (Pl.'s Mem. at 22.) The ALJ found persuasive Dr. Antiaris' opinion that Plaintiff had a mild limitation in sustaining concentration and performing at a persistent pace and also credited the opinions of the State agency consultants, who found that Plaintiff would be able to maintain attention/concentration and pace for simple and some complex tasks. (R. 38.) Accordingly, the Court finds that the ALJ adequately considered Plaintiff's migraines, and the resulting RFC determination is supported by substantial evidence.

Third, substantial evidence supports the ALJ's RFC determination regarding Plaintiff's mental impairments. As explained in Discussion Section I above, the ALJ properly evaluated the supportability and consistency of the "marked portion" of Dr. Antiaris' opinion. In his decision, the ALJ also explained why he found other opinions more persuasive with respect to Plaintiff's mental limitations (*see* R. 38) and the Court must defer to his resolution of conflicting evidence. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). The ALJ's decision is otherwise consistent with Dr. Antiaris' opinion that Plaintiff's mental impairments would significantly interfere with her functioning; for example, by finding them severe. (*See* Comm'r Br. at 8.) In limiting Plaintiff to low stress work, the ALJ took into account Dr. Antiaris' opinions that Plaintiff would have certain mild limitations, including mild limitations in sustaining concentration, performing a task at a consistent pace, sustaining an ordinary routine and sustaining regular

attendance at work. (R. 743.) The ALJ's RFC determination regarding Plaintiff's mental impairments also is supported by the opinions of the State agency psychological consultants, which the ALJ found to be persuasive. (R. 38 (citing Exhibits 1A (R. 109), 2A (R. 130), 5A (R. 165) & 6A (R. 202, 206).)

In sum, having considered Plaintiff's arguments regarding the ALJ's RFC determination, the Court cannot conclude that no reasonable factfinder could have reached the ALJ's conclusions. *See Banyai*, 767 F. App'x at 177.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion (ECF No. 12) is DENIED and the decision of the Commissioner is AFFIRMED. The Clerk of Court is respectfully requested to close this case.

**SO ORDERED.**

Dated: New York, New York
November 5, 2026

STEWART D. AARON
United States Magistrate Judge